```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF TEXAS
                 DALLAS DIVISION

UNITED STATES OF AMERICA, )
                          )
          Plaintiff,      )
                          )
vs.                       ) 3:08-CR-00167-B-2
                          )
TONY R. HEWITT,           )
                          )
          Defendant.      )

                   RE-SENTENCING
        BEFORE THE HONORABLE JANE J. BOYLE
           UNITED STATES DISTRICT JUDGE
                NOVEMBER 2, 2022

                A P P E A R A N C E S

For the Government:

     UNITED STATES ATTORNEY'S OFFICE
     1100 Commerce Street - 3rd Floor
     Dallas, TX  75242
     214/659-8600
     BY:  AMY J. MITCHELL

For the Defendant:

     Law Office of Russell Wilson II
     1910 Pacific Avenue, Suite 15100
     Dallas, TX  75201
     469/573-0211
     RUSSELL@RUSSELLWILSONLAW.COM
     BY:  RUSSELL WILSON, II

COURT REPORTER:  SHAWNIE ARCHULETA, TX CCR No. 7533
                 1100 Commerce Street
                 Dallas, Texas 75242

proceedings reported by mechanical stenography,
transcript produced by computer.
```

```
 1                (In open court at 1:28 p.m.)
 2                THE COURT:  Good afternoon.  Ms. -- just a
 3     the minute.  Let me announce the case.
 4                This is Case Number 3:08-CR-167, United
 5     States versus Tony Hewitt.
 6                Who is here for the government?
 7                MS. MITCHELL:  Amy Mitchell for the
 8     government.
 9                THE COURT:  That's right, Ms. Mitchell.
10     They have gone through a lot of attorneys, but now
11     they have a good appellate attorney.
12                Mr. Wilson for the defense.
13                MR. WILSON:  Good afternoon, Judge.  Good
14     to see.  Thank you.
15                THE DEFENDANT:  Hello.
16                THE COURT:  Hello, Mr. Hewitt.
17                We will get to you in just a minute.
18                Mr. Wilson, would you come up here and
19     argue your motion to dismiss?
20                MR. WILSON:  Your Honor, this case has
21     been before the Court --
22                THE COURT:  Several times.  How many times
23     has it been here, three or four?
24                MR. WILSON:  I believe at least three.
25                THE COURT:  Is this the fourth?  I don't
```

```
 1    know.
 2              MR. WILSON:  And in reviewing the case --
 3    you know, I was appointed on this case first,
 4    earlier this spring.
 5              THE COURT:  It's been quite a case.
 6              MR. WILSON:  It is.  It's -- yeah, I think
 7    record-wise, it's probably the biggest record over a
 8    time span of years that I have seen.
 9              THE COURT:  Yeah.
10              MR. WILSON:  In light of the current
11    remand from the 5th Circuit and the agreement of the
12    government related to vacating Mr. Hewitt's
13    924(c) --
14              THE COURT:  Automatic 25 years.
15              MR. WILSON:  Yes, ma'am -- (c)(1)(A)(i).
16              THE COURT:  Uh-huh.
17              MR. WILSON:  -- the question arose as it
18    related to resentencing whether or not Mr. Hewitt
19    could be sentenced under 924(c)(1)(C)(i), and that's
20    because the conviction was vacated initially, and
21    that statutory provision required a prior
22    conviction.  We believe that the Court should
23    dismiss the remaining 924(c) counts.  And so --
24              THE COURT:  Why?
25              MR. WILSON:  Because there's no legal --
```

1    legal basis for them.  There's no prior conviction

2    as required by the statute that, in fact, did vacate

3    the initial 924(c)(1)(A)(i) and, in essence, also

4    would vacate -- or it -- it would undermine the

5    basis for the 924(c)(1)(A)(i).

6              THE COURT:  So we need to have another

7    trial.

8              MR. WILSON:  No, it wouldn't be that you

9    would have another trial.  It would be that -- you

10   know, because the Supreme Court determined that a

11   conspiracy was not a violent offense, it wasn't a

12   predicate offense for 924(c)(1)(A)(i), it would be

13   that the evidence would not have been legally

14   sufficient to obtain the first conviction.  And

15   because the first conviction relied on the

16   subsequent convictions -- I'm sorry, the subsequent

17   convictions relied on the first conviction, their

18   bases would also, in essence, be unsound.

19             THE COURT:  Doesn't that seem unfair to

20   you?  I'm just asking you.

21             MR. WILSON:  Yeah, it does not seem unfair

22   to me, and I can tell you why.  I mean, you know,

23   gosh, during the time period that we've been

24   certainly -- you know, I still remember trying my

25   first case in front of you, I think.

```
 1              But the view regarding 924(c) in its use
 2    and application in criminal proceedings, I think,
 3    has changed.  And so what I see the Court struggling
 4    with is, is a way to try to recognize perhaps views
 5    that didn't exist in 2008 when the cases were tried
 6    with views that evolved later on and certainly, for
 7    example, with the First Step Act and various
 8    different approaches to criminal justice in a broad
 9    sense.
10              But I say that I don't see it as unfair,
11    because today I see many offenders, even offenders
12    that engaged -- you know, when you talk about
13    serious crime, I think for our business you have to
14    put it all into categories.  All crime is serious,
15    all felony crimes are serious --
16              THE COURT:  But very few are as serious as
17    this.
18              MR. WILSON:  Well, yes, that's true.  But
19    it's also true that very few -- so, for example, you
20    have violent offenders sentenced to 50 years, 60
21    years in cases involving death of multiple
22    individuals.  Even most recently here in Florida
23    we've seen a man --
24              THE COURT:  That was a jury.
25              MR. WILSON:  Right, it was a jury.  But I
```

1    think the approach overall -- so when you start

2    talking about ranges of punishment that exceed a

3    person's reasonable expected lifespan, you know,

4    that's what makes me say, well, I don't necessarily

5    see that result as unfair.

6              Certainly had we known at the time, in

7    2008, then the case might not have gotten tried the

8    same way that it was tried.  But I don't think that,

9    you know, the way that our system of course works,

10   the appellate courts make their decisions and they

11   oftentimes, unfortunately from my side, tell me that

12   I'm wrong on things that I hoped to be right on.

13             THE COURT:  I know.

14             MR. WILSON:  But in this case, the

15   Court -- this case has -- the Davis decision was

16   processed through the court, through the judicial

17   system, and we think that it would -- you know, it

18   came down as the lower courts and the appellate

19   courts below the Supreme Court then began to

20   implement following in essence that line of

21   reasoning from the cases.

22             THE COURT:  That doesn't require us to

23   vacate and not trying again these other cases, does

24   it?

25             MR. WILSON:  Well, as far as -- I guess

1    there's kind of two components to it.  You know,

2    when you asked me initially about the retrial of the

3    case, you know, my initial response was, well, if I

4    don't think the evidence -- that the conviction

5    could stand as is, I don't believe that -- that's

6    why I'm saying -- I don't know for sure that retrial

7    would be in essence barred.

8            It would seem -- I'm not sure that the

9    government would approach the case the same.  So I

10   haven't given a lot of deliberate thought to retrial

11   versus vacating.  But I think the way that the

12   record stands, that the subsequent 924(c)

13   convictions would have to be vacated.

14           Now, if the remedy was retrial as opposed

15   to dismissal, you know, my mind would say the issue

16   was presented to a jury, they deliberated, a verdict

17   was rendered, evidence closed, I think jeopardy

18   attached, things like that would cause me to think

19   that retrial wasn't available --

20           THE COURT:  But they vacated the

21   conviction.

22           MR. WILSON:  Correct.  The conviction,

23   though, would be vacated because the evidence, in

24   essence, was insufficient, is how I would view it.

25           So it wouldn't be vacated, for example,

```
 1    for evidentiary error or it -- it would be vacated
 2    in essence on legal sufficiency because a conspiracy
 3    case cannot be a crime of violence.  The vacating of
 4    a conviction on those grounds would be a legal
 5    ground.  So you wouldn't be able to remand out --
 6    you know, you may ponder the question I raise there
 7    with double jeopardy, Well, could you be prosecuted
 8    in essence for 924(c) with a different predicate
 9    offense.  And I don't know -- you know, a -- I
10    don't --
11              THE COURT:  Okay, Mr. Wilson, enough of
12    that speculation.  I'm just speculating, too.  But
13    is there anything else you have on this motion?
14              MR. WILSON:  I would point out that the
15    government's response only responds on
16    jurisdictional grounds, not on the actual merits of
17    the motion.
18              THE COURT:  Let me hear what they have to
19    say.
20              MR. WILSON:  Yes, ma'am.  Thank you.
21              THE COURT:  Thank you.
22              Ms. Mitchell.
23              MS. MITCHELL:  Good afternoon.
24              THE COURT:  Hi.
25              MS. MITCHELL:  First I would say, as I
```

```
 1    said in my written response --
 2              THE COURT:  Lengthy response.
 3              MS. MITCHELL:  -- on the issue of the
 4    remaining 924(c)s, I think the only avenue for
 5    vacating those is through a 2255.  And because this
 6    would be a successive 2255, the Court doesn't really
 7    have jurisdiction to consider them at all.
 8              Also, in the most recent 2255, this issue
 9    was not authorized.
10              THE COURT:  What do you mean?  Not
11    authorized by the 5th Circuit?
12              MS. MITCHELL:  By the 5th Circuit.
13              THE COURT:  Tell me about that.
14              MS. MITCHELL:  Okay.  So the most recent
15    2255 authorized the Court to consider the 924(c)s
16    that were predicated upon conspiracy to commit bank
17    robbery and nothing else.  Not the 924(c)s that were
18    predicated on bank robbery as a substantive offense.
19              And so the courts --
20              THE COURT:  Did they ask for it to be?
21              MS. MITCHELL:  No, they did not.  It
22    wasn't authorized.  So the Court's jurisdiction is
23    cabined by what the 5th Circuit says you can look
24    at.  And in this circumstance, the only thing the
25    Court could look at are the ones tied to conspiracy.
```

```
 1              So I think for Mr. Hewitt to pursue this

 2      argument, he would need to go and ask the

 3      5th Circuit for authorization to file a successive

 4      motion on this basis.

 5              THE COURT:  What about what Mr. Wilson

 6      says, that, if it's right, that it should all be

 7      dismissed and go away?

 8              MS. MITCHELL:  I don't think that's

 9      correct.

10              First of all, on the sort of underlying

11      merits of it, I think the 924(C)(i) part of this is

12      a sentencing provision.  It's not the substantive

13      offense itself.  And I think in this instance, where

14      we have five remaining 924(c)s, it's simply that

15      first one becomes the (A) offense -- or -- and the

16      later ones are the -- actually, they would all be

17      the first provision now in the government's

18      estimation, since we are saying the subsequent ones

19      should also just be five years.

20              THE COURT:  Okay.  Anything else?

21              SPEAKER:  No, that's all, Your Honor.

22              THE COURT:  Mr. Wilson, anything else?

23              MR. WILSON:  May I have one second?

24              THE COURT:  Okay.

25              (Pause.)
```

```
 1              MR. WILSON:  Just briefly, Judge.

 2              THE COURT:  Yes, come on up.

 3              MR. WILSON:  If the government's position

 4   would be that we need to first seek leave from the

 5   5th Circuit, then we'd ask permission to be able to

 6   seek leave from the 5th Circuit.

 7              THE COURT:  That's under the 5th Circuit.

 8   That's not up to me.

 9              MR. WILSON:  Okay.  Other than that, I

10   think we've set forth our arguments in our motion.

11              THE COURT:  All right.  Thank you very

12   much.  And I appreciate your motion, but I deny it.

13   I don't think there's jurisdiction.  I think it

14   should be a third 2255, if it is at all, and that's

15   up to the 5th Circuit.

16              Why don't you-all come up here, and let's

17   start the sentencing, please.

18              Mr. Hewitt, you know today is the date of

19   your sentencing.

20              You've got to say "Yes" or "No."

21              THE DEFENDANT:  Yes, ma'am.  Yes, ma'am.

22              THE COURT:  All right.  And so,

23   unfortunately, we've been back here several times,

24   but this is, I hope, the last time.  But I'm going

25   to ask you some questions, so I want you to raise
```

```
 1    your right hand so I can place you under oath.
 2              (The Defendant was sworn.)
 3              THE DEFENDANT:  I do.
 4              THE COURT:  Okay.  Let's go through the --
 5    I -- I know you've been through this.  But have you
 6    been through the paperwork, like the original
 7    presentence report?
 8              THE DEFENDANT:  Yes, ma'am, I have.
 9              THE COURT:  And -- and, you know, we have
10    a lot of the addendii, but let me just do it real
11    quick.  Yeah, we have -- let me see.  In 2012, we
12    had the second addendum, the third addendum -- never
13    mind.  I'm just going to go through this stuff we
14    have for today.
15              Have you been through the fifth addendum
16    thoroughly with Mr. Wilson before today?
17              THE DEFENDANT:  Yes, ma'am.
18              THE COURT:  Do you understand it inside
19    out?
20              THE DEFENDANT:  Yes, ma'am.
21              THE COURT:  Do you have any questions
22    about it?
23              THE DEFENDANT:  No, ma'am.
24              THE COURT:  Mr. Wilson, do you agree with
25    that?
```

```
 1              MR. WILSON:  I do agree with that, Your
 2    Honor.
 3              THE COURT:  Okay.  Then I have the
 4    defendant filed objections to the PSR -- hold on a
 5    second -- and those are in Document 694.
 6              Have you been through those objections
 7    with Mr. Wilson before today?
 8              THE DEFENDANT:  Yes, ma'am.
 9              THE COURT:  Thoroughly?
10              THE DEFENDANT:  Yes, ma'am.
11              THE COURT:  Page by page, word by word?
12              THE DEFENDANT:  Yes, ma'am.
13              THE COURT:  Do you have any questions
14    about them?
15              THE DEFENDANT:  No, ma'am.
16              THE COURT:  Anything that should be added
17    or subtracted?
18              THE DEFENDANT:  No, ma'am.
19              THE COURT:  Mr. Wilson, do you agree with
20    that?
21              MR. WILSON:  I do.
22              THE COURT:  Then I have the government
23    accepting the PSR, and that's Document 696.
24              And then I have the government's responses
25    to your objections on 699.
```

14

```
 1              Have you read through the responses to
 2    your objections to -- to your PSR objections?
 3              THE DEFENDANT:  Yes, ma'am.
 4              THE COURT:  All right.  Any questions
 5    about them?
 6              THE DEFENDANT:  No, ma'am.
 7              THE COURT:  Mr. Wilson, do you agree with
 8    that?
 9              MR. WILSON:  I do, Your Honor.  I think
10    there's another document.
11              THE COURT:  I'm going to go through them
12    all.
13              MR. WILSON:  Yes, ma'am.
14              THE COURT:  And then you have a reply to
15    the government's response in Document 702.
16              Mr. Hewitt, have you been through that
17    carefully with Mr. Wilson before today?
18              THE DEFENDANT:  Yes, ma'am.
19              THE COURT:  Are you sure?
20              THE DEFENDANT:  Yes, ma'am.
21              THE COURT:  Word by word, paragraph by
22    paragraph, with Mr. Wilson?
23              THE DEFENDANT:  Yes, ma'am.
24              THE COURT:  Anything -- you understand it?
25              THE DEFENDANT:  Yes, ma'am.
```

15

```
 1              THE COURT:  Any questions about it?
 2              THE DEFENDANT:  No, ma'am.
 3              THE COURT:  Okay.  Then I have the
 4   sixth addendum to the presentence report.  I want
 5   you to look at that carefully.
 6              Have you looked at the sixth addendum with
 7   Mr. Wilson page by page, paragraph by paragraph?
 8              And you can spend time doing it if you
 9   want to.
10              MR. WILSON:  Judge, I actually don't
11   believe I have the sixth addendum with me.
12              THE COURT:  Why don't you go over it with
13   him and the seventh addendum.
14              MR. WILSON:  And I have the seventh here,
15   but I don't have the sixth.
16              THE COURT:  Go through the sixth with him.
17   Sit over there and go through it with him.
18              (Pause.)
19              MR. WILSON:  May we approach the lecturn
20   now?
21              THE COURT:  Yes.
22              MR. WILSON:  So we have gone through the
23   sixth addendum.  I do probably need to make a few
24   comments for the record.
25              THE COURT:  Absolutely.
```

16

```
 1              MR. WILSON:  So with respect to the
 2    objections that we filed to the fifth addendum
 3    regarding application -- or whether the First Step
 4    Act applied, it was my intent that those objections
 5    continued to apply to the subsequent addendums --
 6              THE COURT:  Yeah, they do.
 7              MR. WILSON:  -- as well.
 8              Mr. Hewitt has asked me to confirm that we
 9    are also objecting to, I believe it's Count 23 in
10    the sentence, of five years, which I believe that we
11    did do in the objections to the fifth addendum.
12              THE COURT:  Okay.
13              MR. WILSON:  But to the extent that we
14    haven't, I would like to renew or reurge that
15    objection.
16              THE COURT:  Okay.  Is that it?
17              THE DEFENDANT:  Yes, ma'am.
18              MR. WILSON:  Yes, ma'am.
19              THE COURT:  Is that all on the sixth
20    addendum --
21              MR. WILSON:  That's all --
22              THE COURT:  -- or do you need to look at
23    it more?
24              MR. WILSON:  No.  We have also covered the
25    seventh addendum, and I think Mr. Hewitt's -- we're
```

17

```
 1   also commenting on the . . .
 2           THE COURT:  On the sixth addendum, have
 3   you looked at it carefully with Mr. Wilson,
 4   paragraph by paragraph, word by word, page by page
 5   today?
 6           THE DEFENDANT:  Yes, ma'am.
 7           THE COURT:  Any questions about it?
 8           THE DEFENDANT:  No, ma'am.
 9           THE COURT:  Go ahead in the seventh.  You
10   have comments about the seventh?
11           MR. WILSON:  Yes, Your Honor.
12           May I?
13           THE COURT:  Yes.
14           MR. WILSON:  And may I return the copy of
15   the sixth addendum to probation?
16           THE COURT:  Yes, you may.
17           MR. WILSON:  And I have also covered the
18   seventh addendum with Mr. Hewitt paragraph by
19   paragraph and word by word.
20           THE COURT:  Mr. Hewitt, do you agree with
21   that?
22           THE DEFENDANT:  Yes, I do.
23           THE COURT:  Any questions about it?
24           THE DEFENDANT:  No, ma'am.
25           THE COURT:  Thank you very much.
```

18

```
 1              If you-all would step aside, I would like
 2    to ask Ms. Mitchell something.  And that is in the
 3    sixth addendum.  Of course probation doesn't agree
 4    with you -- and tell me if it's changed -- about the
 5    effect -- hold on a second.  Where is it?  Seventh
 6    addendum.  It's the response to Objection Number 1.
 7              Tell me how you feel about that.  It's the
 8    probation officer supports the fifth and sixth
 9    addendums because of the timing of the offense.
10              MS. MITCHELL:  Do you mean in terms of
11    whether the subsequent 924 should be 25 years or --
12              THE COURT:  They say probation supports
13    the fifth and sixth addendum to the presentence
14    report and no changes will be made.
15              Government objected to the fifth and sixth
16    addendums regarding failure to apply 403 of the
17    First Step Act.  However, pursuant to 403,
18    Subsection (b), applicability to pending cases says,
19    "This section and the amendments made by this
20    section shall apply to any offense that was
21    committed before -- any offense was committed before
22    the date of enactment of this act, if the sentence
23    for that offense has not been imposed as of such
24    date of enactment."
25              Go ahead.
```

19

```
1              It says, "The First Step Act was enacted
2    December 21, 2018, at which time defendant was
3    serving a sentence of imprisonment imposed by the
4    Court on December 6, 2012."
5              MS. MITCHELL:  So when the First Step Act
6    was first passed, the government --
7              THE COURT:  In 2018.
8              MS. MITCHELL:  In 2018 -- the government
9    took the position that the 403 Amendment would not
10   apply to a circumstance like this, where there was a
11   sentence on that date that's later vacated.
12             Recently, as indicated by my filings, the
13   Department has changed their position -- some of
14   that is, I'm sure, policy.  But their part of it is
15   there are now three circuits that have come out on
16   the side of application --
17             THE COURT:  Are they similar to this
18   circumstance, where it was 2006 or '07 when the
19   offenses were occurring?
20             MS. MITCHELL:  They are similar in that
21   those sentences were vacated and then, you know,
22   sent back to be resentenced.
23             So what the courts said there, and also
24   what's -- what's in our argument, is that the
25   vacatur does away with the entire sentence.
```

20

```
1              THE COURT:  And when was this vacated?
2              MS. MITCHELL:  Excuse me?
3              THE COURT:  When was this sentence
4    vacated?
5              MS. MITCHELL:  This -- I'm sorry?
6              THE COURT:  This sentence was vacated,
7    right?
8              MS. MITCHELL:  Yes, this sentence was
9    vacated.
10             THE COURT:  By?
11             MS. MITCHELL:  By the Court's ruling in
12   the 2255.  And the entire sentence was overturned so
13   that you could reconsider the whole package of the
14   sentence.
15             THE COURT:  Overturned by the 5th Circuit
16   or by us?
17             MS. MITCHELL:  By you -- by you.
18             THE COURT:  By me.  It's been a long time.
19             MS. MITCHELL:  Yeah.  I believe these
20   were -- once they received authorization from the
21   5th Circuit to file these 2255s, we did an agreed
22   motion for a vacatur on the conspiracy-based
23   924(c)s.
24             So the Department's seeing that sort of
25   the way the case law is going.  So there are three
```

21

```
 1   circuits are saying --
 2            THE COURT:  What circuits?
 3            MS. MITCHELL:  It is the Third, Fourth,
 4   and Ninth have said the 403 Amendment should apply
 5   when a sentence has been vacated and the person is
 6   being resentenced now.
 7            The 6th Circuit has said the opposite.
 8   And it was -- you know, you were in the department
 9   in your past life, and these things sometimes
10   happen.  And they tried to read the tea leaves as to
11   say which way things are going to go and also be
12   consistent throughout the country.  So the position
13   has changed, and it's the Department's position that
14   a 403 does apply where a sentence has been vacated.
15            THE COURT:  I will be right back.
16            Probation, will you come back with me?
17            (Recess taken.)
18            THE COURT:  Let's go ahead with the --
19   Mr. Wilson, with the sentencing.
20            MR. WILSON:  Yes, ma'am.
21            THE COURT:  And Mr. Hewitt, you can go up
22   there with him if you want.
23            MR. WILSON:  Your Honor, are we at --
24            THE COURT:  We're at -- oh, objections.
25            MR. WILSON:  Yes, ma'am.
```

22

```
1              So, again, our objections, which were --
2              THE COURT:  I'm looking at objections of
3     10/13/21 according to the fifth addendum.
4              MR. WILSON:  Yes, those objections, Your
5     Honor.
6              THE COURT:  Okay.
7              MR. WILSON:  We just renewed those
8     objections.  And it is our view that in light of the
9     Court's determination that it doesn't have
10    jurisdiction to consider the dismissal of the
11    remaining counts to the extent those counts are
12    before the Court, the First Step Act would apply.
13    And those objections are first lodged in Document
14    694 and subsequently joined by the government in
15    Document 771, wherein the government withdrew
16    acceptance of the fifth addendum to the PSR and also
17    joined in our objections.
18             THE COURT:  Okay.  I know I'm going to
19    surprise you with this, but I don't agree.
20             I think the government is making a policy
21    determination on two circuit cases that -- in the
22    Ninth and the Third, which are not really like us,
23    but it's a policy decision that they are making.
24    It's not anything legal, and I think that it's -- if
25    it's vacated, it's not vacated for purposes of the
```

23

```
1   statute.  And I -- I'm going to overrule that
2   objection.  I will be glad to hear from you both on
3   that.  I think I have heard from you both in the
4   briefing, but I'm going to overrule your objection
5   to that.
6            MR. WILSON:  Thank you, Your Honor.
7            THE COURT:  Ms. Mitchell, do you have
8   anything to say?
9            MS. MITCHELL:  No Your Honor.
10            THE COURT:  Go ahead.
11            MR. WILSON:  In light of the Court's
12   overruling the objection, then, I think that would
13   take us to the 3553(a) factors.
14            THE COURT:  Okay.  Is there any other
15   objections?
16            MR. WILSON:  There are no additional
17   objections, Your Honor.
18            THE COURT:  Any objections from the
19   government?
20            MS. MITCHELL:  No, Your Honor.
21            THE COURT:  Okay.  Then I will adopt the
22   fifth, sixth and seventh addendums as the findings
23   and conclusions of the Court, and we will get to
24   what the sentence will be as soon as I hear back
25   from probation.  But go ahead.
```

```
 1            MR. WILSON:  Well, Your Honor, if you
 2    overrule the objections, then the Court would have
 3    necessarily found the 25-year minimums --
 4            THE COURT:  Yes.  Yes.
 5            MR. WILSON:  -- did apply.  Because the
 6    combined effect of those sentences exceeds the
 7    reasonable life expectancy of Mr. Hewitt.  I'm not
 8    going to go into at length the 3553 factors.  I will
 9    note that we did send in to the Court what I would
10    say are mitigation statements and, you know,
11    requests for leniency from Mr. Hewitt's family --
12            THE COURT:  I saw all of those.  And I saw
13    all of the letters and everything from the prison
14    that he's gotten to date.  I've read through all of
15    them.
16            MR. WILSON:  Right.  And so it would be
17    our view that the Court should only assess a
18    sentence in this case of 25 years.  Part of that is
19    based off of our belief that he should not be
20    sentenced under the subsequent 924(c)s.  But to the
21    extent that the Court does apply those, we think
22    that the sentencing structure conflicts with 3553(a)
23    in that it necessarily produces a sentence that is
24    greater than necessary for punishment of the crime.
25            Mr. Hewitt does have, I believe, an
```

25

1    allocution statement that he would like to make to

2    the Court.

3              THE COURT:  Absolutely.

4              Mr. Hewitt, go ahead, and speak into the

5    mic.

6              THE DEFENDANT:  First of all, Your Honor,

7    I just want to say that I'm grateful for this

8    opportunity to -- to be here.

9              THE COURT:  I see more remorse in you.

10              THE DEFENDANT:  Man.

11              THE COURT:  Take your time.  Take your

12    time.

13              THE DEFENDANT:  Throughout the past 14

14    years of my life, I've had a chance to -- to really

15    sit down and look at who I was and what I had

16    become.  I wasn't proud of the guy that I saw in the

17    mirror, so I spent the last 14 years reinventing

18    myself with programming and taking classes and

19    reaching out to my victims.

20              I want you to know that every victim that

21    I harmed, that was a part of this trial, that I

22    wrote each one of them a letter, and I told them how

23    sorry I was for all the pain that I've caused them

24    and their family.

25              When you engage in criminal activities --

1    well, I'm going to say when I was engaging in

2    criminal activities, I never thought about the

3    psychological, the emotional, the mental scars.  I

4    just knew that I had no plans on shooting, stabbing

5    or hurting no one physically.

6              THE COURT:  But you did plan to kidnap

7    someone, right?

8              THE DEFENDANT:  No, ma'am, I did not.  No,

9    ma'am, I did not.  Whatever the ledger that was

10   found in Mr. Duffey's car, I had no knowledge about

11   anything, about no kidnapping or none of that.

12             THE COURT:  Okay.

13             THE DEFENDANT:  No, ma'am.

14             THE COURT:  Okay.  My -- like I said, my

15   plan was, you know, to go, you know, get the money

16   and period, that was it.

17             But like I say, Your Honor, I've spent the

18   last 14 years trying to better myself.  And I know I

19   have, because my life history for the last 14 years

20   says that.  Who gets sentenced to 355 years and

21   goes -- not one time, but twice -- against sentenced

22   to 300 years and go -- and go and do an about-face

23   with their life?

24             You said, Your Honor -- and I want to

25   quote this.  I want to quote this.  You -- you --

```
 1    you said, Your Honor, that my past history is
 2    egregious and --
 3              THE COURT:  Go ahead.  Take your time.
 4              THE DEFENDANT:  You said, "And so the
 5    aspects of your life that I would consider
 6    mitigating, the way you were born and the fact that
 7    you have some gifts, is far outweighed by how you
 8    have used those gifts, which is for the bad.  And
 9    you've gotten yourself in the same situation that
10    anyone else would have done the same thing.  But the
11    harm that you created by choosing to use these gifts
12    that you were born with in such a harmful way, that
13    counts against you, and it overwhelms any
14    possibility that I should consider leniency."
15              But I stand before you today, Your Honor,
16    and I ask if my behavior can get me into this mess,
17    can't it be allowed the same opportunity to get out
18    of this mess.
19              I'm asking you, Your Honor, to look at my
20    development since being sentenced to 355 years.
21    Neither one of us knew that this day would come.  I
22    could have went on with my life using my gifts for
23    the bad.  But I found myself, Your Honor.  I plead
24    for mercy to make a difference in other lives, in my
25    community.  And most of all, in my son's life, who
```

```
 1   is 14 years old, who has never seen me a day in his
 2   life other than through pictures.  Life brings about
 3   a change in everybody and everything, some for the
 4   good, some for the bad.
 5           But what is right in the moment isn't
 6   always what's best in the end.  Life is about
 7   compromises, and that's what's true and what's
 8   right.  Sixty more seconds and I'm done, Your Honor.
 9           THE COURT:  Oh, no, it's okay.  It's okay.
10   You can on as long as you want.
11           THE DEFENDANT:  Throughout this journey, I
12   have learned that each of us is more than the worst
13   thing that we've ever done.  And I see poverty as
14   necessary wealth.  The opposite of poverty is
15   justice.  And this nation hasn't reflected on how we
16   treat the rich and the privileged, but how we treat
17   the poor, the disfavored and the condemned.
18           If we can look at ourselves closely and
19   honestly, we will see that we all need justice and
20   we all need mercy, and perhaps we all need a measure
21   of unmerited grace.
22           In the gospel of Luke, chapter 15, there's
23   a story about a woman.  And it says that there was a
24   woman who had ten silver coins and she lost one.
25   And the scripture says that she swept her house
```

1   diligently from front to back until she found the

2   coin.  And when she found the coin, he said that she

3   called her friends and said, Hey, come and rejoice

4   with me for that which I have lost, I have found.

5            For a long time, Your Honor, I -- I

6   couldn't understand why -- why the woman looked for

7   the coin so diligently.  She had nine more coins.

8   She could have went on about her life and could have

9   been as happy and content as she wanted to be.

10           But God gave me a revelation and showed me

11  and told me why she looked for the coin so

12  diligently.  Even though the coin lost its

13  usefulness, because you can't lose something that

14  was lost, she understood that the coin still had its

15  value.  And Your Honor, my life has value.  I may

16  have lost a lot of my usefulness because of where

17  I'm at, but, Your Honor, my life has so much value.

18  And I know that I am able to go to society and live

19  in society and change people life and help people

20  that have lived through or going down the same path

21  that I went through.  I would never believe that

22  justice is served by me dying in prison.  Yes, I

23  deserve to be in prison.  Yes, I deserve to do some

24  time, but to die in prison, Your Honor, I could

25  never -- I could never see that as justice.

```
 1              Thank you.
 2              THE COURT:  Thank you very much,
 3    Mr. Hewitt.
 4              Would you all step aside so we can hear
 5    from Ms. Mitchell, if you have something to say,
 6    Ms. Mitchell.
 7              MS. MITCHELL:  In light of the Court
 8    overruling our objections, we would just leave the
 9    sentence to your discretion on the -- and ask for
10    something within the guideline range on the
11    underlying offenses and then the additional
12    statutory sentences that are required.
13              THE COURT:  Okay.  Thank you very much.
14              Okay.  We're going to take a break until I
15    hear from probation again.  So it will probably be
16    about ten minutes or so.
17              We're in recess.
18              (Recess taken.)
19              THE COURT:  Mr. Wilson, if you and your
20    client will come up here.
21              All the objections are done.  All right.
22              You know, Mr. Hewitt, what you had to say
23    really touches me.  I mean, I think your life has
24    value.  And I'd like to see, you know, you do more
25    with it.
```

31

```
 1              I just -- when I think about the case,
 2   it's just so horrendous.  I mean, the -- you know, I
 3   will start with, you know, your -- your -- you've
 4   absolutely done great in prison.  Although you had
 5   14 infractions, you haven't had any for two years,
 6   but you had 14, including sexual conduct, but
 7   anyway.
 8              I know you were the ringleader.  And
 9   you've -- you've got a nice family.  You've got
10   great letters.  You've got a beautiful speech that
11   you gave me.  And I believe it, and I think you
12   believe it.
13              But on the other hand, you are the
14   mastermind of multiple violent takeover bank
15   robberies, involving large capacity -- I'm quoting
16   from the government right now, large capacity
17   firearms where victims were physically assaulted and
18   tasered.  Okay?  I mean, it just -- it just
19   happened, and you were part of it.  And not only
20   were you part of it, you planned it.
21              And, you know, we don't have that like
22   that in Dallas, not very often.  But these bank
23   robberies so frightened everybody in Dallas.
24   Everybody was on the lookout for you guys, because
25   we never knew when it was going to happen.  And they
```

32

```
1    looked for you for about two years or something.
2    But the -- you gave all the orders.  You -- the --
3    they -- you had gathered the names, home addresses
4    and vehicle information for bank managers.  I don't
5    know if you did that or not.  I'm not going to count
6    that you did that.
7              But when you were arrested, present at the
8    bank robbery when they caught you, you led law
9    enforcement on a high-speed chase, high-speed chase,
10   from Garland to Plano Costco.  You went inside the
11   store, hid in the bathroom.  The evidence also
12   highlights that you have not simply chosen a life of
13   crime, but it's violent crime.  I mean, let me just
14   look here at your pretrial report from the first
15   time around.
16             Aggravated robbery with a deadly weapon in
17   1985 when you were 18.  Credit card abuse.  It goes
18   on and on and on.
19             And your conduct reflects a gross
20   disrespect for people's rights.  Now, I know how you
21   feel right now, but I am wondering if you feel that
22   way because you are in prison, because once you get
23   out, I don't know what will happen.  But your
24   habitual, violent criminal conduct ultimately, it
25   will prevent the public from feeling comfortable.  I
```

33

1   mean, if I let you out, the public will not be

2   comfortable.

3           I know you say you have changed, and I

4   would like to believe it.  But on the other hand, we

5   have so many violent bank robbers and two attempted

6   robberies, and you have 111 victims.  111.  Whether

7   you have written letters to all of them or not, I

8   don't know, but 111 people that you have touched

9   that will never be the same.

10          You know, 14 infractions.  Let me just see

11  what they were, because I know they were serious.  I

12  know you haven't had one in two years, but 14

13  infractions.  Let me just see where that came from.

14          Yeah.  Fourteen disciplinary infractions

15  during your period of incarceration for phone abuse,

16  disrupt monitoring; for giving or accepting money

17  without authorization; for refusing to obey an

18  order; for interfering with staff; for engaging in

19  sexual acts on November 14th; for interfering with

20  security devices on November 14th, 2009; using mail

21  without authorization; and fighting with another

22  person in 2019.

23          So, you know, all of that makes you --

24  makes me think -- makes me wonder if this is all for

25  sentencing.  I just don't know, but I can't take the

34

 1    chance, Mr. Hewitt.  I can't take the chance.

 2           The nature of the crime is too serious.

 3    Multiple bank robberies, you were in charge of them.

 4    You called the shots.  And so for that, I'm going to

 5    sentence you to the following sentence:

 6           Under the 3553 factors, I think these are

 7    not more than they should be and just enough to

 8    carry out the purposes of our sentencing statutes

 9    for deterrence of others -- and not that anybody

10    else would do this -- but for deterrence of others;

11    for just -- just punishment for the crime and for

12    all the other 3553 factors.

13           So it will be on Counts 1, 14, 15, 16, 20,

14    24, 28, 32 and 36, 60 months -- hold on a second --

15    and then 120 months on Count 6, and then 300 months

16    on counts -- each of Counts 22, 26, 30, 34 and 38.

17    All counts listed above are to run consecutively to

18    one another to the extent it produces an aggregate

19    sentence of 365 months.

20           Furthermore, the defendant is hereby

21    committed to the Federal Bureau of Prisons for a

22    period of 60 months -- that's five years -- on

23    Counts 23, and 300 months -- that's 25 years -- on

24    Counts 27, 31, 35, and 39 to run consecutive to each

25    other and to any other sentence imposed, for an

1    aggregate sentence of 1,260 months.  The total

2    aggregate sentence for prison is 1,625 months.

3              Pursuant to the Mandatory Restitution Act,

4    the defendant is required to pay restitution in the

5    amount of $355,976, payable to the U.S. District

6    Clerk, 1100 Commerce, Room 1452, Dallas, Texas

7    75242.

8              Restitution shall be payable immediately,

9    and any unpaid balance shall be payable during

10   incarceration.

11             Restitution shall be disbursed to:

12             Bank of America.

13             Attention:  Security Director.

14             Reference:  Bank Robbery on 4/24/08 in the

15   amount of $85,000;

16             To the State Bank of Texas.

17             Attention:  Security Director in the

18   amount of $14,000.

19             Reference:  Bank Robbery on March 28th,

20   2008;

21             And then to Comerica Bank.

22             Attention:  Security Director.

23             Account Reference:  Bank Robbery on

24   February 1, 2008, in the amount of $246,000;

25             And then CitiBank.

1               Attention:  Security Director.

2               Reference:  Bank Robbery on January 28,

3       2008, in the amount of $5,000;

4               And then, finally, Century Bank.

5               Attention:  Security Directory.

6               Reference:  Bank Robbery on March 28,

7       2008, in the amount of $5,976.

8               If upon commencement of the term of

9       supervised release any part of the restitution

10      remains unpaid, the defendant shall make payments on

11      such unpaid balance in monthly installments of not

12      less than 10 percent of the defendant's gross

13      monthly income or at a rate of not less than $50 per

14      month, whichever is greater.  Payment shall begin no

15      later than 60 days after defendant's release from

16      confinement and shall continue thereafter until the

17      balance is paid in full.  In addition, at least

18      50 percent of the receipts received from gifts, tax

19      returns, inheritances, bonuses, lawsuit awards or

20      any other receipt of money shall be paid toward the

21      unpaid balance within 15 days of receipt.  This

22      payment plan shall not affect the ability of the

23      U.S. to immediately collect through garnishment, the

24      Treasury Offset Program, the Inmate Financial

25      Responsibility Program, the Federal Debt Collection

37

```
 1    Procedures Act of 1990, or any other means under
 2    federal or state law.  Interest is waived pursuant
 3    to 18 U.S.C. Section 3612(f)(3).  No fine will be
 4    entered, and there is 100-dollar special assessment
 5    on each count for an assessment of $2,000.
 6              The term of supervised release is three
 7    years as to Counts 1, 6, 14, 15, 16, 20, 24, 28, 32
 8    and 36, and 5 years as to Counts 22, 23, 26, 27, 30,
 9    31, 34, 35, 38 and 39 to run concurrently with each
10    other.
11              Mr. Wilson, have you read through the
12    supervised release conditions with your client?
13              MR. WILSON:  Yes, Your Honor, I have.
14              THE COURT:  Okay.  Mr. Hewitt, do you
15    agree that he's read through the supervised release
16    conditions with you?
17              THE DEFENDANT:  Yes, ma'am.
18              THE COURT:  One through nine, and then one
19    and two between the special conditions.
20              THE DEFENDANT:  Yes, ma'am.
21              THE COURT:  Okay.  Do you agree to be
22    bound by those conditions?
23              THE DEFENDANT:  Yes, ma'am.
24              THE COURT:  No objections?
25              THE DEFENDANT:  No, ma'am.
```

```
 1              THE COURT:  You can appeal this sentence
 2    if you want to.  I expect that you probably will.
 3    If you want to, Mr. Wilson will do that for you, or
 4    Mr. Wilson will find someone to do that for you.  So
 5    let him know that.  You have two weeks from the date
 6    of my judgment -- and my judgment will be probably
 7    tomorrow or Monday -- to file an appeal.
 8              Mr. Wilson, would you please timely file
 9    the notice of appeal if he wants to appeal?
10              MR. WILSON:  Yes.  And Mr. Hewitt has
11    notified me that he does want to appeal.
12              THE COURT:  And Mr. Wilson, is there
13    anything -- RDAP definitely, if you haven't done it
14    already, it's going to be in the conditions.
15              What else would you like?
16              MR. WILSON:  That's all, Your Honor.
17              THE COURT:  Institutions?
18              MR. WILSON:  Do you have a preference?
19              THE COURT:  You can go anywhere in the
20    U.S.
21              THE DEFENDANT:  I'm good in Oklahoma.
22              MR. WILSON:  We would request designation
23    to Oklahoma.
24              THE DEFENDANT:  I'm still there.
25              THE COURT:  Where in Oklahoma?
```

39

```
 1              THE DEFENDANT:  I'm already in Oklahoma,
 2    I'm just back.
 3              THE COURT:  Okay.  I don't know if they
 4    will change it, but I will make it Oklahoma.
 5              Anything else?
 6              THE DEFENDANT:  Judge, I just want to say
 7    for the record, if it's okay, Your Honor --
 8              THE COURT:  Sure.
 9              THE DEFENDANT:  -- those 14 disciplinaries
10    that you read -- and I want it on the record,
11    because I want you to see -- 12 of those 14
12    disciplinaries was before I got sentenced.  You
13    know, as well as I know, before I got sentenced and
14    during trial, coming to trial, I had no respect for
15    the government authority, none of that.  And you
16    knew that, right?
17              THE COURT:  Right.  Right.  You did the
18    assault in 2019, right?
19              THE DEFENDANT:  No, ma'am.  No.  It --
20    what happened -- yes, that was 2019.  But what
21    happened was three guys jumped on me.  And in
22    prison, if you defend yourself -- you can't defend
23    yourself in prison.
24              THE COURT:  I understand.
25              THE DEFENDANT:  And that's what it was.
```

1   Three guys jumped on me, and I defended myself.

2   That's what that was, Your Honor.

3           THE COURT:  Thank you.  It's on the record

4   now.

5           Ms. Mitchell, do you have anything?

6           MS. MITCHELL:  No, Your Honor.

7           THE COURT:  Anything else?

8           MR. WILSON:  That's all, Your Honor.

9           THE COURT:  We are in recess.

10          Mr. Hewitt is remanded to custody, and we

11  are in recess.

12              (Court in recess at 2:37 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2              I, Shawnie Archuleta, CCR/CRR, certify

3     that the foregoing is a transcript from the record

4     of the proceedings in the foregoing entitled matter.

5              I further certify that the transcript fees

6     format comply with those prescribed by the Court and

7     the Judicial Conference of the United States.

8              This 17th day of January 2023.

9

10

11                         s/Shawnie Archuleta
                           Shawnie Archuleta CCR No. 7533
12                         Official Court Reporter
                           The Northern District of Texas
13                         Dallas Division

14

15

16    My CSR license expires:  December 31, 2023

17    Business address:  1100 Commerce Street
                         Dallas, TX  75242
18    Telephone Number:  214.753.2747

19

20

21

22

23

24

25

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER – 214.753.2747**